**TESTERION, INC., a California corporation, Plaintiff,**

v.

**Earl W. SKOOG, David P. Stasney, Michael J. Ranalla, and William Robert Kircher, individually and d/b/a Associated Technologies and Supply, and d/b/a Zero Defects, and Micro Concepts, Inc., a Minnesota corporation, Defendants.**

Civ. No. 4–84–911.

United States District Court, D. Minnesota, Fourth Division.

Dec. 17, 1984.

Thomas E. Peterson, and Thomas D. Jensen, Lommen, Nelson, Sullivan & Cole, Minneapolis, Minn., for plaintiff.

Phillip R. Krass, Krass, Meyer & Walsten, Shakopee, Minn., for defendant Micro Concepts, Inc.

Joan Bettenburg, Bertie, Bettenburg & Strong, St. Paul, Minn., for defendant William Robert Kircher.

Stewart R. Perry, Wayzata, Minn., for defendant David P. Stasney.

Stephen J. Snyder, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for defendant Earl W. Skoog.

Charles O'Connell, St. Paul, Minn., for defendant Michael J. Ranalla.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff, Testerion, Inc. (Testerion), brought this action for breach of contract, conversion, fraud, unfair competition and misappropriation of trade secrets against defendants Earl W. Skoog, David P. Stasney, Michael J. Ranalla, and William Robert Kircher, individually and d/b/a Associated Technologies & Supply, and d/b/a Zero Defects, and Micro Concepts, Inc. (Micro Concepts). Jurisdiction is alleged under 28 U.S.C. § 1332. Micro Concepts and Skoog have filed counterclaims against Testerion and Mania GmbH (Mania), a West German corporation, for breach of contract, breach of warranty, tortious interference, and violation of federal and state antitrust laws. This matter is now before the court on the motion of Testerion for a writ of replevin or in the alternative a preliminary injunction, and on the motions of Stasney and Micro Concepts to dismiss.

### I. Background

Testerion is a California corporation which is the exclusive United States licensee for electronic bare circuit board testing equipment manufactured by Mania. Testerion, as exclusive licensee, is the only company from which Mania equipment can be purchased. It also operates thirteen test centers nationwide that provide testing services to the large number of circuit board manufacturers that cannot afford to purchase the equipment.

This dispute arises out of the sale of a Mania bare circuit board testing machine to Micro Concepts in May of 1984. Testerion was unaware at the time of the sale that the machine was ultimately intended to be used by the individual defendants to set up a testing service in competition with Testerion's Minneapolis testing center. The individual defendants are all former employees or independent sales representatives of Testerion who discontinued their association with the company to provide testing services through their own company on July 18, 1984.

The actual purchaser of the machine was Zero Defects, Inc. (Zero Defects), a California corporation and competitor of Testerion which employed Micro Computers as a spe-

cial purchasing agent. Zero Defects in turn leased the equipment to Technology Congress, Ltd. (Technology Congress), which is using yet another corporation, Associated Technologies & Supply, Inc. (AT & S), to actually operate the testing service. These two corporations are owned and managed by the individual defendants. The purchase was set up in this manner because the individual defendants could not afford the $300,000 purchase price and because they believed that Testerion would probably not sell the machine to them directly.

The contract between Testerion and Micro Concepts established a purchase price of $289,561. A payment schedule was established and payments of $202,692.70, the last by check dated on July 11, 1983, were accepted by Testerion. The Mania equipment was delivered and installed by July 13, 1984. Final payment of $86,869 was formally tendered to Testerion on September 21, 1984 but was refused. Testerion contends that final payment was due on August 13, 1984, and the failure to tender payment at that time was a material breach of contract. It also asserts that Micro Concepts has breached other provisions of the contract. The defendants assert that the delayed tender of payment was not a material breach and that Testerion is in breach of the contract because certain pins in the machine are defective and Testerion has failed to cure the defect.

The individual defendants were associated with Testerion in various capacities. Earl Skoog served as an independent sales representative for Testerion and conducted its marketing for a fourteen state area of the midwest beginning in October of 1982. His career in the circuit board industry spans twenty years and includes service for two other companies during the same time period that he represented Testerion. Skoog had an employment agreement with Testerion that was entered into in May of 1983, several months after he began sales work. Skoog asserts that the employment agreement was terminated in April of 1984, but in any event it was terminated effective July 3, 1984. He also incorporated

Technology Congress and AT & S, the companies operating the Mania machine and is an officer and director of both companies.

David Stasney has also worked for many years in the printed circuit board industry. He was first employed by Testerion in 1982 as general manager and he subsequently established the Minneapolis test facility. In March of 1984, Stasney gave notice and left Testerion to join Skoog's independent sales representative organization. While employed at Testerion, Stasney had an employment agreement with the company. He serves with Skoog as an officer and director of the corporations that are operating the Mania equipment. Michael Ranalla worked as a test supervisor at Testerion's Minneapolis test facility. He succeeded Stasney as general manager of the Minneapolis facility until he gave notice and was then terminated on approximately July 24, 1984. He also had an employment agreement with Testerion. Robert Kircher was never an employee of Testerion but has worked as a part-time, and then full-time employee of Skoog's independent sales representative organization. Both Ranalla and Kircher are now associated with AT & S.

Testerion contends that it is entitled to a writ of replevin or preliminary injunctive relief because of defendants' fraud and misrepresentations in concealing the identity of the true purchaser of the Mania machine. It also seeks to replevy the machine based upon a material breach of the contract. It asks in the alternative for injunctive relief alleging that the defendants have engaged in unfair competition and have misappropriated trade secrets through their efforts to establish a competing business and their use of confidential information to steal customers from Testerion and compete unfairly.

The defendants raise numerous defenses going both to the merits and to the showing necessary to obtain a writ of replevin or preliminary injunctive relief. They contend that it was lawful to conceal the identity of the intended user of the Mania ma-

chine because otherwise they would risk receiving defective equipment, incurring delays, or facing an outright refusal to sell to them. They assert that the sales policy of Testerion and Mania is in violation of the antitrust laws. On the issue of a writ of replevin, they assert that because the owner, lessee, and operator of the machine are not parties to this action no relief can be granted. In addition, they contend that Testerion cannot make the necessary showing of success on the merits or of irreparable harm and that valid defenses have been raised, thus precluding any preliminary relief. Micro Concepts has affirmatively moved to dismiss the action under Rule 19(b) of the Federal Rules of Civil Procedure for failure to join Zero Defects and Technology Congress as indispensible parties. Stasney has moved to dismiss the claims asserted against him, arguing that under the terms of his employment agreement they must be submitted to arbitration.

## II. Discussion

### A. Replevin

Under the federal rules, all remedies providing for seizure of property for the purpose of securing, satisfaction of a judgment ultimately entered in an action are available under the circumstances and in the manner provided by the law of the state in which the district court is held. Fed.R.Civ.P. 64. Accordingly, Testerion's motion for a writ of replevin must conform with the provisions of Chapter 565 of the Minnesota Statutes.

*Minn.Stat.* § 565.23 governs the recovery of property after notice and hearing. A party seeking replevin is required to demonstrate a probability of success on the merits. *Minn.Stat.* § 565.23, subd. 3. Even if such a showing is made, seizure will not be ordered if the opposing party can show a defense to the merits of the claim which is a fair basis for litigation and which, if established at the hearing on the merits, would entitle the party to retain possession of the property. *Id.* § 565.23, subd. 3(a).

The court finds Testerion fails to meet the standard for issuance of a writ of replevin. Questions are raised because the record owner, the lessee, and the operator of the machine are not parties to this action. The issue of which party has title to the machine under Minn.Stat. § 336.2–401(2) is also highly disputed. Furthermore, the defendants assert that the purchase by Micro Concepts for an undisclosed principal was lawful and that the sales policies of Testerion are in violation of the antitrust laws. Testerion also claims a right to equitable replevin. The court, however, finds the analysis under Minn. Stat. § 565.23 to be controlling in this instance, and any other issues or requests for relief are more properly brought and considered under the claim for injunctive relief.

### B. Preliminary Injunction

In ruling upon a motion for preliminary injunctive relief, the court should consider the probability that the movant will succeed on the merits; the threat of irreparable harm to the movant; the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and the public interest. *Dataphase Systems, Inc. v. CL Systems, Inc.,* 640 F.2d 109 (8th Cir.1981).

The court has carefully reviewed the materials submitted and finds the preliminary injunctive relief is not warranted under the *Dataphase* factors. The court finds that Testerion has not made the necessary showing of irreparable harm. *Id.* at 114, n. 9. Its claims of irreparable harm from unfair competition and misuse of confidential information have not been sufficiently substantiated. Testerion conceded, as it must, that the defendants have the right to compete with their former employer. *See* Plaintiff's Memorandum at p. 14 n. 1. The defendants, as former employees and representatives, by the very nature of those relationships had access to information concerning Testerion.

Testerion has not established on this record that the information possessed by the defendants is confidential or that they are using that information to engage in unfair competition. Rather it appears that any information they possess was not obtained improperly and was not treated as confidential by Testerion. Furthermore, the record at this time indicates that they have obtained customers and conducted testing services without improper activity. *See* Affidavit of Earl W. Skoog at ¶ 3, 5–12. The affidavits submitted by Testerion do contain some evidence of improper conduct that may ultimately be proven at a later point in the proceedings. While Testerion may ultimately prevail on the merits, however, it has not made the necessary showing of irreparable harm to entitle it to preliminary injunctive relief. Full relief for any fraud or breach of contract can be obtained if warranted after a final determination on the merits.

A review of the remaining *Dataphase* factors also leads to the conclusion that Testerion is not entitled to preliminary injunctive relief. The likelihood of success on the merits is uncertain at this time. Each of Testerion's claims is strongly contested and in addition, it faces counterclaims for breach of contract, breach of warranty, tortious interference, and violations of the antitrust laws.[1] Questions of intent and knowledge are raised under many of the claims and need to be more fully developed if a proper determination of these issues is to be reached. Testerion has noted that under California law, six elements are necessary to establish that information is a trade secret. *See Tennant Co. v. Advance Mach. Co.*, 355 N.W.2d 720, 725 (Minn.App.1984) (citing *Futurecraft Corp. v. Clary Corp.*, 205 Cal.App.2d 279, 23 Cal.Rptr. 198 (1962)). The evidence presented fails to show whether Testerion will be able to satisfy each of those elements. *Id.* The remaining two factors, the balance of harm and the public interest, are not crystalized for one party or the other, in large measure because of the uncertainty of the resolution of the merits. It does appear that AT & S would suffer a severe loss of its current business revenue if it were denied the use of the Mania machine. *See* Affidavit of Earl W. Skoog, ¶ 24. Testerion states that AT & S is engaged in other lines of business where it can continue to compete. *See* Affidavit of Edward G. Shea, ¶ 12. It, however, has not countered the assertion that the testing services provide the bulk of the current revenue for AT & S.

### C. Motions to Dismiss

Micro Concepts has brought a motion to dismiss under Rule 19(b) of the Federal Rules of Civil Procedure for failure to join indispensable parties. It asserts that Zero Defects is the owner of the Mania machine and therefore must be joined as a party. It continues that since Zero Defects is a California corporation as is Testerion, such joinder will destroy the complete diversity between the parties and thus deprive this court of jurisdiction.

Rule 19(b) comes into play only when the requirements of Rule 19(a) have been met.[2] Under Rule 19(b) the court is to consider a list of four factors in determining "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The determination of whether someone is indispensable therefore often depends on the circumstances of the particular case. 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1607 (1972).

The court has carefully reviewed the record to date and all the materials

---

1. Micro Concepts has counterclaimed for breach of contract. Earl Skoog has counterclaimed in conjunction with AT & S and Technology Congress alleging unpaid commissions, tortious interference, breach of warranty, and violations of both federal and state antitrust statutory provisions.

2. Rule 19(a) lists the instances when non-party will be joined if feasible to allow for a just adjudication. *See* Fed.R.Civ.P. 19(a).

submitted and finds that Zero Defects and Technology Congress are not indispensable parties to this action. Zero Defects involvement in the dispute is peripheral even though it is the owner of record of the machine. Its role as undisclosed principal does not necessarily make it an indispensable party, especially when the agent and the main perpetrators of the alleged fraud are parties. *See Milligan v. Anderson,* 522 F.2d 1202 (10th Cir.1975).

 Stasney has brought a motion to dismiss the claims against him on the basis of an arbitration clause contained in his employment agreement with Testerion. The claims asserted against Stasney, however, are not limited to those covered by the employment agreement, so accordingly, his motion should be denied.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion for writ of replevin or preliminary injunctive relief brought by plaintiff Testerion, Inc. is denied.

2. The motions to dismiss brought by defendants Micro Concepts and David P. Stasney are denied.